Good morning, Your Honors. May it please the Court, Susan Foley for Appellant, Plaintiffs Kimberlyn Rodriguez and Eric Rodriguez. Kimberlyn Rodriguez is present in court with me today. This case is brought before you because the two lower tribunals did not decide a very important issue that impacts not only this case, but cases in San Mateo County when probation is placing students that are in their parents' home but wards of the court. In this case, Eric Rodriguez entered the high school district, San Mateo Union High School District, as a ninth grader, and he soon became a behavioral problem due to his learning disability. It's throughout his individualized education plans that his behavior at school was interfering with his ability to benefit from his education. The district held an annual IEP meeting in November 2002 and November 2003. Both times, they drafted a behavioral support plan, but they were ineffective. The most important plan was November 2003, when Eric's behavior changed from defiance, noncompliance, and disrespectfulness into truancy. At the administrative level, the district made a point that there were less referrals for discipline in the 2003-04 school year, but that was due to the fact that Eric was no longer coming to school on a regular basis. In addition, in November 2003, his speech therapy, which he needed for disfluency, he's a severe stutterer, was terminated and changed from direct therapy to consultation, where the speech therapist chats with his teacher as to his needs. Even though the speech therapist said at the IEP meeting and wrote in his IEP, he needs direct speech therapy, but we're not going to offer it to him until he attends school regularly. And Ms. Rodriguez testified that he wasn't attending school regularly because of his severe stutter, resulting in anxiety, resulting in social phobia. So here's created a circle where Eric was denied a free, appropriate public education, which his right under the hood. The third way the district failed him was they wrote in the behavioral support plan, if the plan is not effective, then he will be referred to county mental health for an assessment and a determination if he needs mental health services. The district never followed through with that referral. Eric was never referred to county mental health for an assessment to see if he needed services. During one of his days that he was truant, and in learning disabled children, we often refer to it as school refusal. They do not go to school, even though they have an IEP that's supposed to preempt that behavior. Eric was caught stealing a beer with another student at the local grocery store, Molly requested. He was then put on probation. He was made a ward of the court by the state of California, placed on probation, and placed in his mother's home. Now under the Individuals with Disability Education Act, every student identified as special needs with an IEP has a local educational agency that is to provide them with an appropriate education at no cost to their parents. In this case, at all relevant times, the local educational agency was the San Mateo Union High School District. Eric was never incarcerated. When the children are incarcerated, then the county office of ed takes over their IEP implementation. Eric went from his home, and court ordered by probation, to out-of-state residential schools to address his behavior that was exhibited at school. Was he a ward of the court then, essentially? He was a ward of the court placed in his mother's home. That is the only way the juvenile court can assert probation and control over the student. But he was a ward of the court placed in his mother's home, and went from his mother's home to court-ordered out-of-state placements, where they met his educational needs and his mental health needs. And he eventually earned enough units and credits to graduate from high school, and did in fact graduate in June 2006 with a high school diploma. And when you say out-of-state placements, he was sent out-of-state to a school. The first placement, March 2004, was in Idaho. But when you say placement, who placed him? Probation. Probation recommended it. The parent agreed that it would be a good placement, and the juvenile court ordered it. And the school district had nothing to do with it? The school district had nothing to do with it. When they had an affirmative duty to follow him, pursuant to John K., which is cited in my brief, to follow him through the juvenile system, they didn't. In fact, Marvin Myers, the director of special education, testified, once a student is placed by probation, they are no longer the school district's responsibility. Well, following that logic, if a student living in his parent's home on probation is court-ordered out of the district to any school, any private school, and the district is not responsible for implementation of an IEP, or an appropriate education, or funding, who is? Because probation is not a local educational agency. The Superior Court, sitting as a juvenile court, is not a local educational agency. And the student was a resident of the school district, in the boundaries of the school district. There is no exception in the Individuals with Disability Education Act that a student who is placed in their parent's home by probation not be afforded a FAPE. There is no such exception. Are you arguing that essentially, as it was litigated before the State administrative proceeding in the district court, that because of the various failures of the district along the way, the district had an obligation to provide this child with a placement other than in the public school, and failed to do it? Or are you arguing, as you seem to be in your briefs, that because the placement out of State was a condition of probation, the school district had an obligation to pay for it? We're arguing both. There are two avenues to reimburse plaintiff. Number one, the denial of FAPE from August 2000, well, July 2003 through March 2004, while student was in Hillsdale High School district schools. They denied him FAPE, failure, as I discussed earlier. They are entitled to compensatory education, and the equitable remedy would be to reimburse parent for the placement thereafter. That's the only way to make the student whole. But the parent never asked the school for that placement, or told the school about the placement rate. The second avenue that we're seeking a remedy for is because the district sat back and let probation order the student. The district had an obligation to take an active duty. The reason I ask this question is, was that second issue ever exhausted, but through the State agency? Yes, it was. It was raised in the administrative. You can't tell from the opinion. Where was it raised? Pardon me? You can't tell from the administrative opinion. You cannot tell from the administrative opinion, and you cannot tell from the trial court's opinion, because they were both completely silent on the issue. I don't know why they were silent. I do know that's why we're here. And it was raised at the administrative level, and it was briefed. It's in the closing brief of the district. They argue John K. doesn't apply. They did not argue failure to exhaust administrative remedies. That's a new argument, and they've waived that argument because they did, in fact, argue it at the administrative level. It was raised several times throughout the hearing that that was an issue that petitioner expected the administrative law judge to determine. It's in the transcript. In fact, I asked Mr. Meyers, Director of Special Ed, whether or not he believed the State court could usurp a free, appropriate public education, because during his testimony, he was taking the position, which the district has taken all along, that once a student's on probation, it's not their responsibility, regardless of where they're living. And it was objected to, and it was agreed amongst counsel and the judge that that was a legal conclusion, and I specifically said a legal conclusion for the It wasn't answered. It's silent. It's a common occurrence for probation to say your student, your child could be put in jail, or you can pay for a private placement. And parents that are well-to-do silently, quietly, and with shame, make the placement. Families that aren't well-to-do, their children are Ms. Rodriguez's case brings light, brings the spotlight, to this very important issue in San Mateo County. And I might note that both the administrative law judge and the Federal court cited Alameda County, but this is San Mateo County that we're talking about. But your ultimate position is that your answer to the Burlington case and the fact that that she didn't unilaterally change her child's placement, is that basically your point? I don't look at it as a pure unilateral placement, because she did it under a court order. She may have agreed with probation that this is a good place for Eric to go, on the three placements. But a unilateral placement is when a parent rejects an IEP offered by a school district and places the student privately. At all times, if the failure to give notice in this case, the court needs to weigh the conduct of the parties. Who was reasonable? Was the parent reasonable or unreasonable in denying or reducing reimbursement? In this case, the parent followed a court order. She did not know, and she testified, she did not know the district could or would make such a decision. She testified. An IEP meeting was held, and the district told the parent, no, we're not changing his placement. So when the court ordered the placement, she obtained a loan and made the placement. She did not know. In addition, there is an excuse for parents to not provide notice to a school district. And in this case, it would apply. Any mother does not want their child to go to jail. And the court does not want the child to go to a private school. And if parent gave the school district notice, number one, Marvin Myers testified he wasn't our responsibility, so the district most likely would have done nothing different. Number two, probation and the school district could pull the student back into the State and into jail, if she had given notice.  And the parent was put in a difficult position in that this placement probably worked out well for the child. I guess I, statutorily, I'm under, I'm not quite understanding what obligation, what, how the school district becomes obligated for this placement if we assume, as the district court found, that there was a, that there was no problem with the original program that was devised for him. Because when probation ordered him to a private school, the school district was his local educational agency that was responsible to provide a free, appropriate public education. And they didn't step up to the plate. Kagan. That's not really an IDEA issue, right? I mean, that's, I mean, you're essentially arguing that the school district should have to pay, but not really because of any IDEA issue. But that's what I'm trying to understand is this, where in the statute do we go to find that this is, that your position is correct? It's the Individual with Disability Education Act. Yeah. Where? That all students are entitled to a free, appropriate public education and must work hand-in-hand with other public entities to make sure it happens. The district didn't work with probation. Yes, but this child was outside of the, for lack of a better word, jurisdiction of the school by virtue of a court adjudication that where, as I understand it, he was either going to be placed in a juvenile detention situation or in a placement elsewhere. If you follow that logic, he doesn't have a local educational agency at that time, and IDEA did not contemplate all students get a FAPE except for children on probation in their parents' home. You're taking away his local educational agency following that theory, and that leaves him in limbo. I understand. Thank you. I'm out of time. Yes. And I didn't reserve. That's fine. We'll hear from the other side, and if we need to ask you any questions, we will. Okay. Thank you. Good morning. May it please the Court. My name is Kimberly Smith. I'm here to speak for San Mateo Union High School District. As a threshold point, I do want to address whether or not plaintiffs have ever argued whether the status of being a ward of the court somehow triggers an obligation for the local education agency under the IDEA to provide a FAPE. And our position is that it first was never argued, but also that it was not. In the administrative hearing, evidence was brought about what these programs were like. We believe in order to show that they should be reimbursed as being an appropriate educational placement, that the argument itself that the status as a ward of the court was not asserted as a legal basis under the IDEA to somehow trigger San Mateo's obligation to pay for those programs. Well, I'm not sure the argument is that it triggered it, but that it never – that the school district never lost it. Right. The obligation. Yeah. And on the issue of who the local educational agency is, the Federal regulations and it's section 300.2 does make a county juvenile court a local educational agency or has the potential to be a local educational agency under the IDEA. I think the real issue here is that there was a complete lack of disclosure on the part of the parent, both to the juvenile court and letting them know that they were dealing with a special education student that may have had an IEP and needed attention under IDEA, and then at the same time back to the school district that he was even leaving because he was in the juvenile court system. Plaintiffs have never cited to any statute or case law that John K. was mentioned today, but that does not impose a duty or an obligation on the school district to follow its students. What Mr. Myers testified at hearing three years after the fact is that from the school district's perspective, the parent had come and said we are withdrawing our student. I'm sending my student to this out-of-state facility. No mention was ever made of the criminal adjudication. No mention was made at IEPs that had been held since his arrest. So the school district was completely in the dark that there was any kind of criminal proceeding going on at all. And it is not our duty to follow students, just as students can come into the district and say they want to enroll, if they say we want to withdraw from the district, especially without saying we're withdrawing because we have some complaint with what you've been doing, for us to follow out, follow them and figure out why. Nor do we have a duty to somehow be monitoring the juvenile court system to see if any of our kids are in that system. It would be the obligation of the parent. And in this case, we had full participation by the parents through the IEP process. In fact, Eric was old enough to attend his own IEPs, and as the IDEA allows, it was a group decision as to what was the appropriate program for him, and there had been no complaints. So we have a history of working well with this family. The IEP teams are convened, programs are written, parent signs off on them, and then one day after a period of absence when we follow up as to just why he's not active in school, mom says we're sending him to this other school. And so at that's – from that standpoint, with no complaints and no mention of the criminal adjudication, we don't have any reason to believe other than it is a private placement at that point. Now, there – so there was – I thought at some point the school became aware of the criminal charges. We became aware when due process was filed. And if you look at the way the issues are framed in the ALJ's decision of what went to due process, which comes from the due process complaint, even there it doesn't mention either status as a ward of the court or that there's a criminal proceeding going on. It cites defects, alleged defects, with the IEP process while he was in the school, and then it seeks reimbursement for the private placements afterwards. And I believe even that the plaintiffs used the term private placement at that point. It was through the process of preparing for the due process hearing that the district first came aware that there was a criminal record when documents are exchanged and all that happens. So even at the very initiation of due process, we didn't know that this was an issue. And we don't believe that it was properly – properly cued up as an issue for the ALJ to consider in due process, again, in terms of whether just being in juvenile court and having that ward status somehow obligates the district to provide services. And I think the John Kay case is important in distinguishing when that might happen, because in John Kay you did have communication between the family and the school district. The school district was aware that the student was going through the criminal process. Members of the school district were visiting that student during a period of incarceration. There was a collaboration, which is what the IDEA envisions, between the school district, the family, and the court in that case to ensure that there was a continuation of the IEP that that particular student needed moving forward. So that's – that's how that case distinguishes. And I disagree that it provides some kind of affirmative duty for the district to follow in a situation where it has no reasonable notice that took place. I also disagree that it was ever argued before due process, after he had already graduated from high school, that Eric ever needed a residential placement. Again, going back to the idea that these IEPs were convened, he was put in a special day class with a special education teacher for his academics. He had speech and language. He had a behavior support plan. He had a plan in place to address all of his needs, and nobody at any point raised the idea that he needed to be removed and go into a residential placement. So I don't think that's been ever argued in this case before. So in our position – from our position, it comes down to a strict Burlington analysis. We have to look at what are the obligations of the school district under the IDEA from the standpoint of what knowledge they have and what was being communicated by the parents. And so under Burlington, we have the three components of whether or not FAPE was being properly provided by the district. And we contend that it was. Through the academics, the behavior support plan, and the speech and language therapy. The second prong is whether – if that was not delivered by the school district, is the private placement selected by the parent meeting the child's unique needs under the IDEA? And what was presented at the administrative hearing were various spokespeople from the institutions that Eric attended, and what you found was that the elements of his IEP were not being delivered. He had no speech and language therapy. He had academics, but it was not – it did not seem to be addressing – it did not seem to be by credentialed special education teachers that would be addressing learning disabilities. And he didn't really have a behavior support plan for him. He was in the type of schools that the juvenile courts use to generally address behavior and provide general group and individual counseling. But each one of the individual administrators and teachers from these institutions had never looked at Eric's IEP from his time at San Mateo. So they were not delivering a program that would have met his unique needs under the IDEA. So that's another prong in Burlington that would support reimbursement that fails in this case. And then finally, you have the notice issue that, again, what we're hearing as a school district is just that parent is going to be removing her student, not that she's doing it because she's dissatisfied, and not making any kind of claim that she wants the school district to be paying for this private placement. So under the Burlington analysis, which even I think, John – That the mother was not satisfied with the assessment with the program that he was in. Within the school district, no. We did not know that. I mean, we had – there was one time, and this actually precedes the statute of limitation periods on this time, where she wrote the letter saying she wanted a change in placement. It's in the record that the meeting was convened. There's an interim IEP. They discussed his program and what it was. And by the end of that meeting, she said that she was fine leaving it the way it was. And that's what's documented in the record. So she raised a concern. So the due process was asked for at what point? What time was the case filed for due process? Yes. That would have been July of 2006. So it's a 3-year statute, and I think the request for change in placement was earlier in that 2003 year, March or April. So it's just before that. Do you understand Burlington to require a prior notice of discontent, or simply that the parent operates at their own risk if they act on it? I think it's more the latter, as you describe it. But I think that the notice requirement is well spelled out in Section 1412 of the IDEA itself requiring that prior notice, as well as the Berger case, which we cite 348F3-513. So under both of those provisions, you do have a notice requirement. I'll give you the exact wording. Section 1412A10C3 requires 10 business days of notice prior to removal from the public school system. And that is so that you do have the opportunity for the school district to collaborate with the parents to resolve whatever the complaint may be. And, again, that's what so stands out so much in this case, is that we do have the complete lack of collaboration or communication of any kind between parent and school district. And, instead, we have a parent coming back 28 months later and saying, this is what experience I've been through, and now I want you to pay. I mean, it could have been, if we'd had notice and we were brought into the juvenile court system, as the LEA that knew the student and had an IEP for him could have participated and figured out what the best solution was. So it's twofold. One, we didn't have notice and the chance to participate. And, second, the programs that he went to weren't even addressing his educational needs. So that makes reimbursement inappropriate because it's not a program that provided him what he needed under the IDEA, and so it wouldn't be appropriate for us to pay for that. Kagan, did parents, before filing the due process hearing request, come to the district and ask for the money? No. No. Our first notice was the actual filing. So until the time that Mom had a conversation with his teacher as to why he hadn't been showing up to school until we received a filing, there was no communication whatsoever between the family and the school district. And I think that's, you know, that's what we keep coming back to. Ms. Foley referenced, you know, reasonable conduct of the parties. I think Mom was reasonable in doing what she needed to do for her son and make sure that he stayed out of juvenile hall and go to some good placements. But I also think the district was equally reasonable in dealing with what was before them. They didn't have any notice or any warning that there was a situation that they needed to address under their obligations under the IDEA, because as far as they were concerned, and this is what Mr. Myers testified to, is they had a student where a parent was informing them that she was going to privately place him. Was the basis of the administrative denial the lack of notice? Was the basis of the lack of notice for the reimbursement? I think it was – I don't think so much. I think there was – it was more about whether or not it was an appropriate educational placement. And, in fact, that he was not even getting what he would be required to get under his IEP. So more of a Burlington analysis in terms of the – was the district failing him, which the district found that the – or, I'm sorry, the ALJ found that the district was not failing the student, and then she wrote, I think her words were something along the lines, even if I did find that these institutions that he went to were not appropriate to deliver the services he required to meet his unique special needs under the IDEA. Just a last comment to address something that was said in the opening argument. Under the IDEA, the typical remedies are either some type of compensatory education or reimbursement. I feel that it was represented to the Court that those two things are the same, and I just want to identify that they're not. If someone is not getting the services that they need during a specific period of time while they're in school, there might be a compensatory remedy. For example, I wasn't given any speech and language, so now you get some. You get services to compensate for the loss. You don't necessarily get reimbursement for a whole different institution and a different placement as that. If there's no other questions, I would just sum up that, again, I think this is a communication issue and we have to look at the reasonableness from the school district standpoint where they provided services to a student with parent participation, cooperation and agreement for a year and a half. And then from the district's perspective, we have a removal to a private placement and no notice or no duty to follow up with the juvenile court system in this case. Thank you. Are there any questions of Ms. Foley? There don't appear to be any. Do we have one minute? Or no? Well, if you want to, we'll give you a minute to respond. Thank you. The question whether or not the school district had noticed that the student was being placed by probation, Mr. Myers testified, and it's in Plaintiff's Excerpt of Record, Volume 4, page 00477, questioned, you would agree that the district or personnel of the district was well aware that Mr. Myers, I would agree that the teacher knew he was being placed there by probation. That triggered an affirmative duty to hold an IEP. Thank you. Thank you. The case just argued is submitted for decision. That concludes the Court's calendar for today. The Court stands adjourned.
judges: Strom, Schroeder, Berzon